UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PATRICK HORSMAN and
HORSMAN HOLDINGS LLC,

    Plaintiffs,

v.                                     Case No.:  2:23-cv-1205-SPC-KCD

MICHAEL COONEY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Defendant Michael Cooney's Motion to Compel Arbitration or Dismiss the First Amended Complaint. (Doc. 32). Plaintiffs Patrick Horsman and Horsman Holdings LLC responded in opposition. (Doc. 40). Thus, the motion is ripe for review.

This action arises out of a business divorce. But resolving Defendant's motion requires returning to the relationship's beginning. In August 2006, Patrick Horsman and Defendant co-founded Blue Sand Securities LLC, a placement agent and broker-dealer that raises money for alternative investment funds, hedge funds, private equity, real estate, and venture capital investments. (Doc. 29 ¶ 14). Contemporaneously, they executed an operating agreement (Doc. 29 at 34-40) containing an arbitration clause. Several years

later, in 2015, Nelson Cooney (Defendant's brother) was added as a member of Blue Sand Securities.[1]  (Doc. 29 ¶ 26).

Fast-forward to July 2020, the three members agreed to change the ownership structure of Blue Sand Securities.  Rather than the three individual members' ownership, Blue Sand Securities would be owned solely by a single entity: Blue Sand Capital LLC.  (Doc. 29 ¶ 38).  Defendant Nelson Cooney and Horsman Holdings would own and manage Blue Sand Capital.  (Doc. 29 ¶¶ 40-42).

In July 2020, the parties amended Blue Sand Securities' 2006 Operating Agreement to reflect its sole member as Blue Sand Capital to accomplish this purpose.  (Doc. 29 at 98-103).  Of course, being an entirely new entity, Blue Sand Capital needed its own operating agreement.  So, on that same day, the three members executed the Blue Sand Capital Operating Agreement.  (Doc. 29 at 45-96).  This Agreement does not contain an arbitration clause.

Then came the divorce.  In a nutshell, Plaintiffs claim Defendant unilaterally pushed Horsman Holdings out of Blue Sand Capital and improperly redeemed its thirty-percent membership interest.  Defendant and Nelson Cooper purportedly accomplished this by amending the Blue Sand Capital Agreement behind Plaintiffs' back to make it easier to redeem

---

[1] Nelson Cooney was originally a defendant, but he was voluntarily dismissed.  (Doc. 46).

2

Horsman Holdings' shares and pay out less money for doing so. On that score, Horsman Holdings alleges Defendant violated various Blue Sand Capital Operating Agreement provisions, breached the implied covenant of good faith and fair dealing, and breached his fiduciary duty. Alternatively, both Plaintiffs assert Defendant was unjustly enriched. (Doc. 29).

With that background, the Court turns to the matter at hand. Defendant moves to compel Plaintiffs to submit this case to arbitration. Alternatively, Defendant argues this Court lacks subject-matter jurisdiction because Plaintiffs failed to join indispensable parties—Blue Sand Securities and Blue Sand Capital—whose joinder would destroy diversity. Finally, Defendant argues Plaintiffs fail to state a claim. Because the Court must have subject-matter jurisdiction over the underlying dispute before compelling arbitration, the Court begins there. *See* 9 U.S.C. § 4; *Redman Home Builders Co. v. Lewis*, 513 F. Supp. 2d 1299, 1306 (S.D. Ala. 2007) (noting "an order compelling arbitration is permissible only where the federal district court would have jurisdiction over a suit on the underlying dispute").

Defendant argues that Blue Sand Securities and Blue Sand Capital are necessary and indispensable parties that must be joined as defendants under Rule 19(a), but their joinder would destroy diversity, depriving the Court of jurisdiction. And even under Rule 19(b), the argument goes, the case cannot proceed without these parties, so the case must be dismissed. *See Hensley v.*

3

*Hartford Cas. Ins. Co.*, No. 22-11458, 2024 WL 4035389, at \*6 (11th Cir. Sept. 4, 2024); *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1321 (11th Cir. 2017). But the Court need not conduct the Rule 19 analysis because Blue Sand Securities' and Blue Sand Capital's joinder would not destroy diversity.

Plaintiffs are both citizens of Puerto Rico. (Doc. 29 ¶¶ 2-3).[2] So for their joinder to destroy diversity, either Blue Sand Securities or Blue Sand Capital must also be Puerto Rican citizens. *See Nat'l Loan Acquisitions Co. v. Pet Friendly, Inc.*, 743 F. App'x 390, 392 (11th Cir. 2018) (diversity jurisdiction requires that "every plaintiff must be diverse from every defendant"). Defendant does not properly assert the citizenship of these LLCs.[3] But as best the Court can tell, neither are Puerto Rican citizens. Blue Sand Securities' sole member is Blue Sand Capital, so their respective citizenships hinge on Blue

---

[2] A limited liability company is a citizen of every state in which one of its members is domiciled. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004); *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002). Horsman Holdings' two members are both trusts. The sole trustee of those trusts is Patrick Horsman. Because Patrick Horsman is a Puerto Rican citizen, Horsman Holdings is also a Puerto Rican citizen. *See Alliant Tax Credit 31, Inc v. Murphy*, 924 F.3d 1134, 1143 (11th Cir. 2019) (noting that a traditional trust "holds the citizenship of its trustee").

[3] Defendant broadly asserts in his motion that Blue Sand Securities and Blue Sand Capital are Delaware LLCs. But this is meaningless. *See Bander v. Aerovanti, Inc*, No. 8:23-CV-01894-MSS-AAS, 2024 WL 2833723, at \*3 (M.D. Fla. June 4, 2024) ("For purposes of diversity jurisdiction, the limited liability companies' states of incorporation and principal places of business are irrelevant."). Indeed, this entire argument seems premised on a lack of understanding as to how an LLC's citizenship is established. That said, Plaintiffs' counsel never pointed out this flaw. In fact, he never addressed the jurisdictional argument at all, so it seems he deserves equal criticism.

Sand Capital's members.[4]  Given Defendant redeemed Horsman Holdings' membership, Blue Sand Capital apparently has two members: Defendant and Nelson Cooney.  Defendant is a Florida citizen, and Nelson Cooney is a Maryland citizen.  (Doc. 29 ¶¶ 4-5).  Thus, Blue Sand Capital and Blue Sand Securities are citizens of Florida and Maryland.  Because neither is a Puerto Rican citizen, their potential joinder raises no diversity concern, and dismissal for that reason is unwarranted.  Defendant's request to dismiss for lack of jurisdiction is denied.[5]

Satisfied with its jurisdiction, the Court shifts gears to Defendant's request to compel arbitration.  Defendant invokes the arbitration clause in the 2006 Blue Sand Securities Operating Agreement, which states in pertinent part:

> The parties waive their right to seek remedies in court, including any right to a jury trial.  The parties agree that in the event of any dispute arising out of, relating to or in connection with this Agreement, such dispute shall be resolved exclusively by arbitration[.]

---

[4] "[I]t is common for an LLC to be a member of another LLC.  Consequently, citizenship of LLCs often ends up looking like a factor tree that exponentially expands every time a member turns out to be another LLC, thereby restarting the process of identifying the members of that LLC." *Purchasing Power, LLC v. Bluestem Brands, LLC*, 851 F.3d 1218, 1220 (11th Cir. 2017).

[5] The question remains whether Blue Sand Securities and Blue Sand Capital are indispensable parties that must be joined.  Prior to Plaintiffs filing their Second Amended Complaint (discussed below), the parties are to confer regarding whether either entity must be joined.  If so, Plaintiffs must join the party (or parties) in the Second Amended Complaint and promptly effect service.  If the parties cannot agree, Defendant may reassert this indispensability issue, if necessary.

5

(Doc. 29 at 39). Defendant believes this clause encompasses Plaintiffs' claims. But Plaintiffs contend their claims arise from an entirely different contract that has no arbitration provision—the Blue Sand Capital Operating Agreement—so they never agreed to arbitrate this dispute.

As a threshold matter, this question of arbitrability is for the Court, not the arbitrator, to resolve. Although Defendant argues that the parties agreed to submit such questions to the arbitrator,[6] his analysis falls short. When parties have entered two different contracts, one of which contains an arbitration clause and the other that does not, "the question is whether the parties agreed to send the given dispute to arbitration—and, per usual, *that* question must be answered by a court." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1193 (2024) (emphasis original). Indeed, under Delaware law, "When conflicting choice-of-forum provisions muddy the parties' intentions regarding substantive arbitrability, it cannot be said that the parties intended to submit the question of substantive arbitrability to the arbitrator." *Fairstead Cap.*

---

[6] The arbitration clause mandates that arbitration be conducted "in accordance with the rules of JAMS[.]" (Doc. 29 at 6). JAMS rule 11(b) provides that jurisdictional and arbitrability disputes, including disputes over the existence or scope of the agreement under which arbitration is sought, shall be submitted to the arbitrator. On this basis Defendant believes the threshold arbitrability question is for the arbitrator.

*Mgmt. LLC v. Blodgett*, 288 A.3d 729, 758 (Del. Ch. 2023).[7] Thus, the Court takes on this issue.

As noted, Defendant relies on the arbitration clause in the 2006 Blue Sand Securities Operating Agreement. The clause limits arbitration to claims that arise out of, relate to, or connect with the 2006 Blue Sand Securities Operating Agreement. So the relevant inquiry is whether Plaintiffs' claims "depend on the existence" of this particular Agreement. *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002). The Court thinks not.

Plaintiffs' case does not arise out of the 2006 Blue Sand Securities Operating Agreement. In fact, this dispute does not arise from that corporate entity at all. Although Plaintiffs reference this Agreement in the Amended Complaint, at the core of this case is Defendant's allegedly wrongful redemption of Horsman Holdings' membership shares in Blue Sand Capital and breach of the Blue Sand Capital Operating Agreement.[8] In other words,

---

[7] The Blue Sand Capital Operating Agreement and the 2020 Amended Blue Sand Securities Operating Agreement contain choice-of-law provisions that require application of Delaware law. (Doc. 29 at 5, 37). Because this is a diversity case, the Court applies Florida's conflict of law rules on enforceability of the choice-of-law provision. *Russo v. Fifth Third Bank*, 634 F. App'x 774, 776-77 (11th Cir. 2015). Florida enforces such provisions unless the chosen forum state's law contravenes strong public policy. *Id.* at 776. Here, there is no reason not to enforce Delaware contract law, so the Court does so.

[8] It is true, as Defendant points out, that Horsman Holdings' breach of contract claim asserts that Defendant's conduct is a "breach of all terms discussed herein, which are incorporated by reference," and such incorporated terms include three provisions of the 2006 Blue Sand Securities Operating Agreement. (Doc. 29 ¶ 123). While this is no doubt sloppy pleading,

7

Plaintiffs' case "would be independently and separately assertable" even if the 2006 Blue Sand Securities Operating Agreement did not exist. *Id.* at 157. That the two entities and their respective operating agreements are related is of no moment. *Cf. Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, 533 F.3d 1342, 1349 (11th Cir. 2008) ("despite the overlap between the contracts," the plaintiff could have brought its claims even if the contract containing the arbitration clause did not exist at all).

The cases cited by Defendant are inapposite. In *Hearn v. Comcast Cable Commc'ns, LLC*, the arbitration clause was far broader than here, extending to "any claim or controversy related to Comcast[.]" 992 F.3d 1209, 1211 (11th Cir. 2021). Similarly, in *Anders v. Hometown Mortg. Servs., Inc.*, the agreement referred "all disputes" between the parties to arbitration. 346 F.3d 1024, 1026–27 (11th Cir. 2003). And although *Robinson v. Anytime Rentals, Inc.*, dealt with an arbitration clause like the one here, the court there found arbitration was warranted because the factual allegations "more than touch matters covered by the Agreement." No. 2:14-CV-528-FTM-38CM, 2015 WL 4393476, at *5 (M.D. Fla. July 15, 2015). That is not the case here.

---

Defendant ignores the general allegations in that count, which assert that Defendant's various conduct breached only the 2020 Blue Sand Capital Operating Agreement. (Doc. 29 ¶¶ 118-124). Given this explicit language, it is a far reach to argue Horsman Holdings invoked the 2006 Blue Sand Operating Agreement, and should thus be compelled to arbitrate, simply through an incidental incorporation clause.

8

If the parties had intended to arbitrate intra-Blue Sand Capital disputes, they could have agreed to do so in the Blue Sand Capital Operating Agreement or otherwise amended the Agreement to include such a provision. Because they did not, the Court "will not compel arbitration of a dispute arising out of one contract on the basis of an arbitration clause in a separate and distinct contract where the arbitration clause is limited to disputes arising out of the first contract." *Gedimex, S.A. v. Nidera, Inc.*, 290 F. App'x 311, 312 (11th Cir. 2008). Thus, Defendant's motion to compel arbitration is denied.

Defendant also seeks to dismiss Plaintiffs' Amended Complaint because it fails to state a claim. Plaintiff Horsman Holdings brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. And both Plaintiffs bring a claim for unjust enrichment. Defendant argues none are sufficiently alleged. He also asks the Court to strike Plaintiffs' prayer for relief.

To survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Twombly*, 550 U.S. at 555. A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable

inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

First up is Horsman Holdings' breach of contract claim. It alleges that Defendant breached the Blue Sand Capital Operating Agreement by: (1) wrongfully redeeming or terminating Horsman Holdings' membership interest without authority; (2) failing to pay Horsman Holdings its share of Blue Sand Capital's net income under the Operating Agreement; (3) unilaterally changing the Operating Agreement without providing notice or holding any vote; and (4) blocking and preventing Horsman Holdings' participation in the business. (Doc. 29 ¶¶ 119-122). It also broadly asserts that "[n]o term or provision in the 2020 Blue Sand Capital Operating Agreement allows for the actions taken" by Defendant and that Defendant's "actions are a breach of all terms discussed herein, which are incorporated by reference." (Doc. 29 ¶ 123). Defendant argues this claim should be dismissed because Horsman Holdings failed to cite a specific provision of the contract allegedly breached, and its broad assertion that the Agreement does not authorize his actions is "not how a breach of contract claim works." (Doc. 32 at 16). The Court agrees.

When a breach of contract claim fails to state which contractual provision was breached, the claim is appropriately dismissed. *Timber Pines*

*Plaza, LLC v. Kinsale Ins. Co.*, No. 8:15-CV-1821-T-17TBM, 2016 WL 8943313, at *2 (M.D. Fla. Feb. 4, 2016). "This is because failing to allege the specific provision of the contract that has been breached is akin to making 'the-defendant-unlawfully-harmed-me-accusation' that the United States Supreme Court warned against in *Iqbal*." *United Fire & Cas. Company v. Progressive Express Ins. Co.,* No. 6:19-CV-1049-ORL-41-EJK, 2019 WL 13067269, at *2 (M.D. Fla. Nov. 20, 2019). Horsman Holdings' allegations toe this line.

Although the Amended Complaint cites specific sections of the Blue Sand Capital Operating Agreement (Doc. 29 ¶¶ 43-48), it is difficult to ascertain which of these provisions it believes were breached by Defendant's conduct. And the broad incorporation by reference to "all terms discussed herein" provides little clarity. Thus, some specificity is needed, and this claim is dismissed without prejudice. *Cf. United Fire & Casualty*, 2019 WL 13067269, at *2 (dismissing breach of contract claim when "[t]he facts of the Complaint allege that Defendant breached the contracts in various ways but do not tie any breach to any specific provision in either of the contracts"); *Houston v. Centene Mgmt. Co., LLC*, No. 19-CIV-20620-RAR, 2019 WL 7971713, at *3 (S.D. Fla. Oct. 20, 2019) (although the plaintiffs provided sufficient allegations that, if taken as true, could state a claim for breach of contract, the "critical flaw" was that "they fail to identify any specific provisions of the contracts that were breached").

11

Horsman Holdings' breach of the implied covenant of good faith and fair dealing also needs work. The implied covenant of good faith and fair dealing applies to implicit obligations to a contract outside the contract's express terms. *See Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 458 (Del. Ch. 2023). To prevail on such a claim, "a plaintiff must prove a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Id.* Pertinent here, "[b]ecause the implied covenant is, by definition, implied, and because it protects the spirit of the agreement rather than the form, it cannot be invoked where the contract itself expressly covers the subject at issue." *Id.* (citations omitted).

Horsman Holdings alleges Defendant breached the implied covenant by: (1) unilaterally purporting to change the operating agreement; (2) blocking its participation in the company; (3) failing to pay it money owed; and (4) amending the Operating Agreement's qualifications for entitlement to distributions of the company's net income. (Doc. 29 ¶ 129). These allegations practically mirror those in Horsman Holdings' breach of contract claim. And, paradoxically, it asserts that Defendant's actions "are a breach of all terms discussed herein" (Doc. 29 ¶ 130), while also stating that it "would have bargained for a contractual term precluding Defendants' wrongful conduct." (Doc. 29 ¶ 132). But the alleged misconduct cannot be both a breach of the

12

express contract and an implied covenant.[9] So count two is also dismissed without prejudice. *Cf. Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) ("To the extent that [plaintiff's] implied covenant claim is premised on the failure of defendants to pay money due under the contract, the claim must fail because the express terms of the contract will control such a claim.").

Next is Horsman Holdings' breach of fiduciary duty claim. Horsman Holdings alleges that Defendant violated his fiduciary duties of loyalty and care by: (1) unilaterally purporting to revoke, redeem, or eliminate its membership interest; (2) failing to pay owed income and distributions; and (3) purporting to amend the Operating Agreement's calculation of distributions to which Horsman Holdings was entitled. (Doc. 29 ¶ 141). Sound familiar? Defendant argues this claim overlaps with Horsman Holdings' breach of contract claim and should be dismissed as duplicative. Plaintiffs offer nothing in response.

When evaluating whether a breach of fiduciary duty claim is duplicative of a breach of contract claim, "the principal inquiry by Delaware courts is whether the fiduciary duty in the complaint arises from general fiduciary

---

[9] This is further reason for Horsman Holdings to specify which express contractual provisions Defendant purportedly breached. Once it does so, the implied covenant claim can fill in the gaps. *See Cygnus Opportunity Fund*, 302 A.3d at 458 (explaining an implied covenant exists where there are contractual gaps).

13

principles or from specific contractual obligations agreed upon by the parties." *Grunstein v. Silva*, No. CIV.A. 3932-VCN, 2009 WL 4698541, at *6 (Del. Ch. Dec. 8, 2009). Because of the "primacy" of contract law over fiduciary law, a breach of fiduciary duty claim will generally survive only when it can survive independently of the breach of contract claim. *Id.* The alleged conduct underlying Horsman Holdings' breach of fiduciary duty claim again mirrors that of the breach of contract claim. As such, dismissal without prejudice is proper. *See Madison Realty Partners 7, LLC v. Ag ISA, LLC*, No. CIV.A. 18094, 2001 WL 406268, at *6 (Del. Ch. Apr. 17, 2001) (observing "the contract and fiduciary claims overlap completely since they are based on the same underlying conduct. Indeed, the complaint uses identical conduct as the basis for both legal claims.").

Finally, the Court turns to Plaintiffs' unjust enrichment claim, which is pled in the alternative. They assert that they conferred a benefit upon Defendant by providing their capital, labor, expertise, efforts, and services to the companies, and it would be inequitable for Defendant to retain such benefit without compensation to Plaintiffs. (Doc. 29 ¶¶ 146-48). Defendant argues that this claim cannot be asserted because an express contract—the Operating Agreement—allows recovery. He further argues that Plaintiffs' fail to sufficiently allege the unjust enrichment claim. For now, the Court agrees with only the latter point.

The elements of unjust enrichment are: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law. *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).[10] Plaintiffs fail to allege the fourth and fifth elements. So this claim is also dismissed without prejudice. *See id.* at 1130-31.

As for Defendant's request to strike Plaintiffs' prayer for relief, the Court declines to do so right now. "A motion to strike is a drastic remedy, which is disfavored by the courts." *Stolinas v. Palmer*, No. 2:18-cv-702-FTM-38-MRM, 2019 WL 827697, at *1 (M.D. Fla. Jan. 28, 2019), *report and recommendation adopted*, 2019 WL 764021 (Feb. 21, 2019). Given that such requests are disfavored and because a Second Amended Complaint is forthcoming that may alter Plaintiffs' requested relief, the Court denies this request without prejudice. That said, Plaintiffs are advised to consider the arguments raised by Defendant when formulating their Prayer for Relief in the Second Amended Complaint.

Accordingly, it is now

**ORDERED:**

---

[10] Because an unjust enrichment claim is "quasi-contract," the Operating Agreement's choice-of-law provision applies to this claim as well. *See Jaris Lending, LLC v. Morgan*, No. 8:23-CV-1181-CEH-SPF, 2024 WL 454422, at *3 (M.D. Fla. Jan. 12, 2024) (evaluating unjust enrichment claim under Virginia law pursuant to the contract's choice-of-law provision).

15

1. Defendant's MOTION to Compel Arbitration or Dismiss the First Amended Complaint (Doc. 32) is **GRANTED IN PART AND DENIED IN PART.**

    a. Defendant's request to Compel Arbitration is **DENIED**.

    b. Defendant's request to Dismiss for Failure to Join an Indispensable Party is **DENIED**.

    c. Defendant's request to Dismiss for Failure to State a Claim is **GRANTED**. Plaintiffs' Amended Complaint is **DISMISSED without prejudice**. By **September 30, 2024**, Plaintiffs must file a Second Amended Complaint that satisfies the pleading requirements.

    d. Defendant's request to Strike Plaintiffs' Prayer for Relief is **DENIED without prejudice.**

**DONE** and **ORDERED** in Fort Myers, Florida on September 16, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

16