UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HORSMAN HOLDINGS LLC,

    Plaintiff,

v.                                      Case No.:  2:23-cv-1205-SPC-DNF

MICHAEL COONEY,

    Defendant.

## **OPINION AND ORDER**

Before the Court are the parties' cross-motions for summary judgment. (Docs. 102, 104). Each party has responded to the other's motion (Docs. 108, 109),[1] and each party filed a reply (Docs. 110, 111). For the below reasons, the Court grants Defendant Michael Cooney's motion and denies Plaintiff Horsman Holdings LLC's motion.

## **Background**

This action arises out of a business divorce. While the facts and issues are somewhat convoluted, Plaintiff simplified this case by impermissibly raising a new legal theory at summary judgment and simultaneously

---

[1] Plaintiff Horsman Holdings LLC's response to Defendant Michael Cooney's motion was also filed as a cross-motion for summary judgment. (Doc. 108). This is improper because Plaintiff already filed a dispositive motion (Doc. 104) and is only permitted one such motion. (Doc. 25 at 4 ("Only **one** motion for summary judgment may be filed by a party . . . absent leave of Court.") (emphasis original)). So the Court treats it as a response.

abandoning the theories it alleged in the Third Amended Complaint. So the Court need not dwell much on the facts and provides an abbreviated background.

Patrick Horsman ("Horsman"), Defendant Michael Cooney, and Nelson Cooney (Defendant's brother)[2] were the members of Blue Sand Securities LLC ("Securities"), a third-party placement agent and broker-dealer that raises capital for alternative investment funds, hedge funds, private equity funds, real estate funds, and venture capital investments. In July 2020, the three members changed the ownership structure of Securities. Rather than having the three individual owners, Securities would be owned solely by Blue Sand Capital LLC ("Capital" or "the Company"). In turn, Nelson Cooney, Defendant, and Plaintiff[3] owned Capital. Defendant held sixty percent of the membership interest, Nelson Cooney held ten percent, and Plaintiff owned the remaining thirty percent. Horsman and the Cooney brothers were managers of Capital. The three members contemporaneously executed the Capital Operating Agreement.

A few months later, the business's reputation took a hit. On October 2, 2020, a group of investors in Integrated CBD—a company Horsman was

---

[2] Michael and Nelson Cooney are collectively, the "Cooney brothers."

[3] Horsman is the sole member and manager of Plaintiff Horsman Holdings, LLC. (Doc. 105 ¶ 4).

affiliated with—filed a lawsuit against Horsman (among others) in Arizona. This lawsuit led to negative publicity for Horsman, resulting in reputational damage to Securities and Capital (jointly, "Blue Sand").

Given this reputational damage and to minimize further negative effects, Horsman resigned as a registered representative of Securities and as a manager of Capital so he could devote his time to defending the Arizona litigation. (Doc. 102-11). Still, the Cooney brothers believed Plaintiff's continued equity ownership in Capital posed too great a risk to the Company because of its association with Horsman. Unable to reach an agreement to buy Plaintiff out of its membership interest, the Cooney brothers took another approach. In March 2021, they used their combined seventy percent membership interest to amend the Capital Operating Agreement by written consent. (Doc. 102-19).

The amended version of the Capital Operating Agreement added section 10.6, which permitted the Company to repurchase a member's membership interest. This section allowed the Company to buy a member's membership interest at "fair market value" if the member "ceases to provide services to" Blue Sand. But if the membership interest is repurchased for reasons constituting "cause" (as defined in the section), then the purchase price is "the lower of fair market value, book value, or the amount paid by [the terminated member] with respect to such Interest being purchased." (Doc. 102-19 at 6–7).

In August 2021, the Cooney brothers repurchased Plaintiff's membership interest by written consent. (Doc. 102-21). And because they determined that cause existed, they paid Plaintiff $15,000—his capital contribution into the company. (*Id.*; Doc. 102-1 ¶ 29).

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show a lack of genuinely disputed material fact. *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991). If carried, the burden shifts to the nonmoving party to point out a genuine dispute. *Id.* At this stage, a court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002). That the parties have cross-moved for summary judgment does not alter the standard. *See United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting

4

summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

## Analysis

### *Operative Complaint*

The Court begins with the allegations in the Third Amended Complaint (Doc. 74),[4] which are crucial to the analysis. Plaintiff alleged Defendant breached the Blue Sand Capital Operating Agreement in a variety of ways. For instance, it claimed Defendant did not obtain the proper consent to amend the operating agreement (section 13.4), and Defendant amended the operating agreement and repurchase its membership interest without proper notice or a proper vote (sections 5.1, 13.1). It claimed that, by not paying Plaintiff the net profits to which it was entitled, Defendant misappropriated its net profits (section 8.1, 8.2(a) and (b)). It also alleged Defendant failed to maintain accurate records or provide records upon request (sections 5.7, 6.3, 9.2, and 9.3). And it alleged Defendant breached of an unspecified section by failing to inform Plaintiff when any vote for the purported redemption of its membership interest occurred, failing to identify the method of calculating the value of the

---

[4] The Court dismissed much of the Third Amended Complaint because Plaintiff and Horsman failed to state a claim, despite multiple attempts. (Doc. 92). All that remains is Plaintiff's breach of contract claim against Defendant (count I) as outlined below.

5

membership interest, and failing to provide the language of the amended Operating Agreement.

Plaintiff also miscellaneously alleged Defendant sent a letter indicating the Cooney brothers "fully intended to continue negotiations regarding the redemption price to see if we can reach an agreement" but no further negotiations took place. (Doc. 74 ¶¶ 188–218).

As recourse for these breaches, Plaintiff sought restoration of its membership interest in Capital and recovery of all net profits and distributions owed. (*Id.* ¶ 221).

Nowhere in the Third Amended Complaint did Plaintiff allege Defendant breached section 10.6 or that Defendant failed to pay fair market value for the repurchased membership interest. And Plaintiff never claimed entitlement to the fair market value of its repurchased membership interest under section 10.6.

*Plaintiff's Motion for Summary Judgment*

Plaintiff moves for summary judgment, not on any claim alleged in the Third Amended Complaint, but on a new one. It argues that Defendant breached the Capital Operating Agreement by failing to pay "fair market value" or "fair value" for its repurchased membership interest. Defendant responds that, apart from failing on the merits, Plaintiff's argument is a new

6

legal theory that it cannot raise for the first time at summary judgment. The Court agrees.

The crux of Plaintiff's argument is that the $15,000 Defendant paid Plaintiff for its repurchased membership interest was insufficient. It maintains that section 10.6 is silent on the method for calculating the value of Plaintiff's shares. Given such silence, Plaintiff argues Delaware law entitles it to the fair market value of its membership interest.[5] (Doc. 104).

Plaintiff's argument makes little sense. Citing Delaware authority, it repeatedly argues that "when an LLC agreement *is silent* on the payout due to a member who is forced out, the member is entitled to the fair market value of their interest, just as equity would require." (*See, e.g.*, Doc. 104 at 11 (emphasis added)). But section 10.6 is not silent on the payout. Rather, it unambiguously states that a member is entitled to fair market value for its repurchased shares unless such shares are repurchased for "cause." (Doc. 102-19 at 6). If cause exists, the purchase price is the lesser of fair market value, book value, or the amount paid by the terminated member with respect to such interest being purchased (in this case, Plaintiff's capital contribution). (*Id.*). In repurchasing Plaintiff's shares, the Cooney brothers stated they were repurchasing the shares *for cause* at the amount of Plaintiff's capital contribution. (Doc. 102-

---

[5] Delaware law applies to this dispute. (Doc. 92 at 12 n.7).

7

21). Plaintiff's assertion that the Capital Operating Agreement is silent on the payment owed to a terminated member or that nothing in section 10.6 specifies an ousted member may only receive its capital contribution is bewildering.

Plaintiff also argues that section 10.6 allowed Defendant to "buy" its membership interest, which requires providing value for the acquisition. Defendant failed to provide any value, according to Plaintiff, because the $15,000 was Plaintiff's capital contribution and, thus, belonged to Plaintiff anyway. (Doc. 104 at 9–10). As Plaintiff puts it, "[b]y treating the *return of capital* as if it were the purchase price for the entire membership stake, [Defendant] was effectively valuing [Plaintiff's] equity interest at zero." (Doc. 104 at 9 (emphasis original)). It believes this "zero-value redemption" was improper. But it cites no authority supporting its position. And given section 10.6 authorized payment of its capital contribution because Defendant found cause existed (something Plaintiff does not dispute anywhere in its motion or reply), the Court is otherwise unconvinced. *Cf. Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 878 (Del. Ch. 2022) (finding a terminated member for cause was entitled to the lesser of his capital contribution or fair market value, noting the LLC Act permits an LLC agreement to impose 'specified penalties or specified consequences'"); *see also Robinson v. Kelly Cable of N.M., LLC*, No. N24C-11-037 CEB, 2025 WL 3516162, at *1 (Del. Super. Ct. Dec. 8, 2025)

8

(addressing an LLC agreement with a repurchasing section almost identical to section 10.6).

All that said, the Court need not dwell on the merits (or lack thereof) of Plaintiff's puzzling theory because, as Defendant points out, Plaintiff impermissibly raises it for the first time at summary judgment. "Despite the liberal pleading standard for civil complaints, plaintiffs may not raise new claims at the summary judgment stage." *Brown v. Jefferson Cnty. Sheriff's Dep't*, 806 F. App'x 698, 700 (11th Cir. 2020). Although a complaint "need not specify in detail the precise theory giving rise to recovery," it must provide the defendant "notice as to the claim being asserted against him and the grounds on which it rests." *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1319 (11th Cir. 2023) (citation omitted). In other words, a plaintiff cannot make a "fundamental change" to the nature of its alleged claims "in the midst of summary judgment[.]" *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).

In the Third Amended Complaint, Plaintiff alleged Defendant breached the Capital Operating Agreement in a multitude of ways, including amending the Capital Operating Agreement without proper consent, neglecting to pay net distributions, and failing to provide access to documents and provide

9

various notices. Plaintiff disputed the validity of section 10.6[6] and Defendant's repurchasing of its membership interest, and it demanded backpay of its unpaid net profits and distributions and reinstatement of its membership interest. Now, Plaintiff not only recognizes section 10.6 and the repurchase, it claims Defendant breached section 10.6 by providing insufficient compensation when "buying" its membership interest. This is an entirely new legal theory arising from a contractual provision Plaintiff previously ignored.[7]

To that end, Plaintiff now claims entitlement to the "fair market value" or "fair value" of its membership interest.[8] But it never alleged such recourse. Indeed, the only mention of fair market value in the Third Amended Complaint is buried in the (now dismissed) tortious-interference claim. Instead, Plaintiff sought an award of all unpaid net distributions (as if its membership interest was never repurchased). Net distributions are very different than the fair

---

[6] Indeed, Plaintiff explicitly alleged: "[d]espite [Defendant's] reference to 'Section 10.6 of the Operating Agreement as amended,' neither the 2020 Amended [Securities] Operating Agreement nor the 2020 Blue Sand Capital Operating Agreement contains a 'Section 10.6.'" (Doc. 74 ¶ 115).

[7] Other than section 10.6, Plaintiff's motion does not address any other section of the Capital Operating Agreement that Defendant purportedly breached (apart from a few conclusory references in its statement of material facts).

[8] Plaintiff repeatedly uses the terms "fair market value" and "fair value" interchangeably. But the two values are not the same. *Cf. Ban v. Manheim*, 339 A.3d 41, 76–77 (Del. Ch. 2025) (distinguishing an award of fair value versus fair market value); *see also* VALUE, *Black's Law Dictionary* (12th ed. 2024). Section 10.6 only references fair market value, so fair value is irrelevant.

10

market value Plaintiff now seeks.⁹ And given this surprise shift, Defendant never had the opportunity to retain an expert to opine on the fair market value of Plaintiff's membership interest in August 2021, when Defendant repurchased it. (Doc. 109 at 2 n.1). This sort of prejudice is why adding a new legal theory at summary judgment is unacceptable. *See Amerijet Int'l, Inc. v. Miami-Dade Cnty., Fla.*, 7 F. Supp. 3d 1231, 1236 (S.D. Fla. 2014), *aff'd*, 627 F. App'x 744 (11th Cir. 2015) ("A plaintiff may not raise a new claim at the summary judgment stage because the opposing party has no notice of the newly-raised claim based on the allegations set forth in the operative complaint.").

Trying to salvage its claim, Plaintiff argues that its "fair value" damages claim is not new. It asserts that "the gravamen of [its breach of contract claim] has always been that Defendant breached the Capital Operating Agreement

---

⁹ Plaintiff argues the difference between its current claim for "fair market value" and its original claim for "lost future distributions" is a distinction without a difference. (Doc. 111 at 7). This could not be further from the truth. Plaintiff's claim for lost future distributions would accumulate the distributions it would have received over the course of several years. Conversely, fair market value looks to what Plaintiff's thirty-percent interest would have sold for under market conditions on a fixed date (*i.e.*, the date the interest was repurchased). *See* VALUE, *Black's Law Dictionary* (12th ed. 2024) (defining "fair market value").

Further complicating matters, although Plaintiff now seeks judgment for fair market value (of roughly $15.9 million), the expert opinion on which it relies does not provide a fair-market-value analysis. Plaintiff's expert explained he was retained to "[c]alculate Plaintiff's economic damages in the form of *lost profits and lost cash distributions*[.]" (Doc. 103-1 at 6–7 (emphasis added)). Indeed, he calculated Plaintiff's lost profits and distributions through April 2025—four years after Defendant repurchased Plaintiff's membership interest. The term "fair market value" is not found anywhere in the expert's report. It seems Plaintiff does not know what damages it seeks.

by wrongfully redeeming Plaintiff's 30% interest without fair compensation." (Doc. 111 at 2). As discussed above, this is untrue. The gravamen of Plaintiff's claim was that Defendant breached the Capital Operating Agreement by failing to pay Plaintiff's distributions and redeeming its membership interest without contractual authorization. Put simply, Plaintiff originally took issue with being ousted from the Company, whereas it now accepts such ousting but seeks additional compensation. Such a "fundamental change" to the nature of Plaintiff's breach of contract claim "in the midst of summary judgment" is not permitted. *See Hurlbert*, 439 F.3d at 1297 (rejecting the plaintiff's attempt to introduce at summary judgment a new statutory basis for which he was entitled to FMLA leave).

Plaintiff later asserts that "[t]he precise relief sought developed as the case progressed, as specific performance became impossible after Defendant secretly dissolved the company without notice to Plaintiff or the Court." (Doc. 111 at 2–3). By admitting to the developing nature of its sought relief, Plaintiff acknowledges its current requested relief differs from that in the operative complaint. And to the extent Plaintiff blames this change on newly discovered information during the case (*i.e.*, Defendant dissolving Capital), this is not justification for raising a new argument now. Rather, Plaintiff should have amended the complaint under Federal Rule of Civil Procedure 15(a) to add the claim. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.

12

2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."); *Li v. Walsh*, No. 16-81871-CIV, 2022 WL 892703, at *4 (S.D. Fla. Feb. 18, 2022) ("Had KK-PB wanted to change the relief sought or its theory of damages, the proper approach would have been to seek to amend its pleading pursuant to Rule 15 of the Federal Rules of Civil Procedure, and not through summary judgment.").

That's not all. Plaintiff's bait and switch is about more than just calculating damages. Section 10.6 generally permits Capital to repurchase Plaintiff's membership interest at fair market value. But if the company repurchased Plaintiff's membership interest for "cause," then it only needed to pay Plaintiff's capital contribution. The Cooney brothers determined cause existed and repurchased Plaintiff's membership interest for $15,000 (the amount of Plaintiff's capital contribution). Thus, determining whether Plaintiff is entitled to fair market value (as it now maintains) turns on whether "cause" existed. This is a new factual dispute not alleged anywhere in the operative complaint (or even addressed in Plaintiff's motion).

In short, Plaintiff's new claim is too little, too late. Its Third Amended Complaint provided a litany of grounds on which it believed Defendant breached the Capital Operating Agreement. But the ground asserted here is not one of them. The Court thus rejects Plaintiff's attempt to raise its new

13

legal theory at summary judgment. And because the rejected theory is the sole basis for Plaintiff's summary-judgment motion, the Court denies the motion.[10]

*Defendant's Motion for Summary Judgment*

Not anticipating Plaintiff's surprise claim, Defendant moves for summary judgment on Plaintiff's breach of contract claim as alleged in the Third Amended Complaint. (Doc. 102). In response, Plaintiff regurgitates its new theory from its summary-judgment motion. But its attempt to add a new claim does not work when opposing summary judgment either. *See Gilmour*, 382 F.3d at 1315 ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Cruz v. Advance Stores Co., Inc.*, 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012) ("[A] party may not raise a new theory for the first time in response to a summary judgment motion."). Plaintiff otherwise provides no response supporting its alleged claims or opposing summary judgment on those claims.[11] It does not address them at all. As such, Plaintiff has abandoned every alleged basis in its pleading for its breach of contract claim. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599

---

[10] At various points, Plaintiff argues Defendant breached the implied covenant of good faith and fair dealing. (Docs. 104 at 13; Doc. 108 at 10–11). But the Court already dismissed Plaintiff's breach of implied covenant claim. (Doc. 92 at 20–21).

[11] In Plaintiff's response to Defendant's motion for summary judgment, it disputes the validity of the amendment to include section 10.6 in its response to Defendant's statement of facts. (Doc. 108 at 4). But this is insufficient. *See Michaels v. Sasser's Glass Works Inc.*, 662 F. Supp. 3d 1223, 1243 (S.D. Fla. 2023), *aff'd*, No. 23-11166, 2025 WL 588648 (11th Cir. Feb. 24, 2025) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

14

(11th Cir. 1995) (explaining that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990) ("Presenting such arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court[.]"); *McIntyre v. Eckerd Corp.*, 251 F. App'x 621, 626 (11th Cir. 2007) (finding no error in the district court's conclusion that the plaintiff abandoned her battery claim by making no argument in response to the defendant's summary-judgment motion on such claim). Thus, judgment for Defendant is appropriate.

Accordingly, it is now **ORDERED:**

1. Defendant Michael Cooney's motion for summary judgment (Doc. 102) is **GRANTED.**

2. Horsman Holdings, LLC's motion for summary judgment (Doc. 104) is **DENIED**.

3. The Clerk is **DIRECTED** to enter judgment for Defendant and against Plaintiff, deny all pending motions as moot, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on January 15, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

15